**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4911**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

       v.

PATRICIA OMONDI, a/k/a Patricia Sanfo, a/k/a Patricia
O'Mundy,

                Defendant - Appellant.

**No. 08-4912**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

       v.

BOUREIMA SANFO, a/k/a Abraham Sanfo, a/k/a Ibraham Sanfo,

                Defendant - Appellant.

Appeals from the United States District Court for the District
of Maryland, at Greenbelt. Deborah K. Chasanow, District Judge.
(8:07-cr-00197-DKC-1; 8:07-cr-00197-DKC-2)

Submitted: February 11, 2010      Decided: March 12, 2010

Before NIEMEYER, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Timothy J. Sullivan, William A. Mitchell, Jr., BRENNAN, SULLIVAN & MCKENNA, LLP, Greenbelt, Maryland; Stephanie Gallagher, LEVIN & GALLAGHER, LLC, Baltimore, Maryland, for Appellants.  Rod J. Rosenstein, United States Attorney, Mara B. Zusman, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Patricia Omondi and Boureima Sanfo ("Defendants"), wife and husband, appeal their convictions for interstate transportation of property obtained by fraud, money laundering, and obstruction of justice, alleging violations of the Fifth and Sixth Amendments of the United States Constitution arising out of the pretrial seizure of funds, and also challenging the sufficiency of the evidence to support their convictions for obstruction of justice. For the reasons that follow, we affirm.

I.

Defendants operated a scheme to defraud victims out of deposits for lot purchases and construction of homes. Defendants held themselves out as executives of Construction Consulting and Management, a purported residential home builder that promised, in addition to constructing the homes, to secure the relevant permits and financing. After their victims paid deposits, Defendants pocketed the money without ever working on the homes.

In July of 2006, almost two years prior to the trial in this case, Special Agent Philip Soto of the Secret Service swore an affidavit of probable cause supporting a seizure warrant of up to $202,435. Based on this testimony, stop payment orders were issued on three $95,000 cashier's checks

3

withdrawn by Omondi from her accounts at Branch Banking and Trust Co. ("BB&T"). Additionally, a magistrate judge issued two seizure warrants pursuant to 18 U.S.C.A. § 981 (West 2006 & Supp. 2009) for all currency in Omondi's BB&T accounts and proceeds from the stop payment orders on the three $95,000 checks. The warrants did not limit Defendants' forfeiture liability to $202,435. However, upon execution of the warrants, the Government seized only $10,078 from Defendants' BB&T accounts. The Government also failed to locate the three cashier's checks.

A few months later, Sanfo and Omondi deposited the three $95,000 checks into a newly opened savings account at Burk and Herbert Savings Bank. In compliance with the stop payment orders, Burke and Herbert Savings Bank returned the checks to BB&T, which deposited the checks into an official BB&T account. On November 7, 2006, a magistrate judge issued another seizure warrant for all proceeds of the three $95,000 checks up to $202,435 at BB&T. The Government executed the third seizure warrant, seizing $202,435, for an aggregate seizure of $212,513, which exceeded the authorized amount by $10,078. On the execution date, the Government served a copy to "Gigi Frio, BB&T Corporate Security," and claims to have sent a copy to Defendants' then-attorney. BB&T held Defendants' unseized

4

balance of $82,565 until prompted by defense counsel's telephone calls to release the funds to Defendants.

On April 25, 2007, a federal grand jury returned a thirteen count indictment charging Defendants with nine counts of interstate transportation of property obtained by fraud in violation of 18 U.S.C. § 2314 (2006), three counts of money laundering in violation of 18 U.S.C. § 1957 (2006), and one count of obstruction of justice in violation of 18 U.S.C. § 1503 (2006). The indictment also contained a forfeiture allegation for $202,435, representing the fruits of the crimes involved in the criminal investigation.

On March 25, 2008 -- after the indictment, and before the trial -- in an attempt to recover the $10,078 in excessively seized funds, Omondi filed a pre-trial motion for return of property pursuant to Fed. R. Crim. P. 41(g) on March 20, 2008. Conceding that it had seized $10,078 in error, the Government agreed to return that sum to Defendants. Defendants also requested that the court hold an evidentiary hearing to determine what had happened to the remaining $82,565, which BB&T had set aside while complying with the Government's warrants, but the Government had never seized. The district court determined that this request went beyond the scope of a motion to return property, and declined to hold an evidentiary hearing because the funds were not in the Government's possession.

However, the court admonished the Government to cooperate with Defendants to secure the return of any additional funds held by BB&T.

The matter proceeded to trial with Defendants being represented by appointed counsel and the Assistant Federal Public Defender without objection or request for substitution of counsel. On April 25, 2008, a jury convicted Defendants on all but one fraud count.

On April 28, Defendants filed a post-trial motion challenging the sufficiency of the evidence supporting their convictions and voicing an intention to file more detailed motions later. On July 10, Defendants filed those motions, arguing for the first time that the Government's failure to serve the November seizure warrant on Defendants left them with the false impression that the Government had seized the entire balance of their bank accounts. As a result, Defendants argued, they had failed to realize that they had funds on hand to pay a private attorney. Defendants thus claimed that the Government denied their Sixth Amendment right to counsel of their choosing. The district court held that because it had not authorized Defendants to file a supplemental, tardy motion, the July 10 motion was untimely. In the alternative, the court rejected Defendants' Sixth Amendment claim on the merits. It found the evidence otherwise sufficient to sustain the jury's verdicts.

The district court sentenced Omondi and Sanfo each to concurrent terms of thirty-seven months' imprisonment followed by three years' supervised release. Additionally, the district court entered forfeiture orders, and imposed assessments of $1200, fines of $10,000, and restitution of $185,135. Defendants timely noted this appeal.

## II.

Defendants argue first that the Government's failure to provide adequate notice of the seizures, the Government's seizure of $10,078 in excess funds, and the district court's denial of a Rule 41(g) hearing deprived them of a Fifth Amendment right to due process and violated their Sixth Amendment right to retain counsel of their choice.

Defendants clarify that they do not challenge the district court's order holding this claim time-barred; and we therefore consider their claim as though raised for the first time on appeal, and thus review under the exacting plain error standard, which requires the appellant to show that: (1) there was error; (2) the error was "plain"; and (3) the error affected Defendants' substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Lynn, 592 F.3d 572, 577 (4th Cir. 2010). Even if the appellant makes this showing, we exercise our discretion to correct the error only if it

7

"seriously affects the fairness, integrity, or public reputation of judicial proceedings." Lynn, 592 F.3d at 577 (internal quotation marks omitted).

Defendants do not claim that they did not receive any notice of the seizures, as they received the July seizure warrants. Rather, they contend that the notice was inadequate because it did not state the exact amount of the seizure, which caused them to mistakenly believe that the Government had seized all of their funds, leaving nothing that they could use to pay their attorney. Defendants also argue that the Government's seizure warrants precipitated BB&T's decision to hold $82,565 of their money in an account over which they had no control, and that the Government therefore deprived them of those funds.

Defendants' argument fails because they cannot show that any error affected their substantial rights. First, Defendants had ample notice of the seizure of their funds, including seizure warrants issued in July of 2006. The actual seizure took place, and Defendants knew that it took place, in late 2006. From that point, they had the ability to request a hearing to show probable cause to seize the funds. The fact that Defendants thought that the Government had seized all of their money, as opposed to only $202,435, gave them more, and not less, reason to inquire about the basis for the seizure. The grand jury returned the indictment on April 25, 2007,

8

putting Defendants on notice that they would need a criminal defense attorney. Surely, Defendants had sufficient notice and time to ascertain the whereabouts of their funds. Furthermore, after Defendants filed their Rule 41(g) motion for return of property in March of 2008, they received a pretrial hearing regarding their motion, in which they recovered all of the improperly seized funds, and became aware that BB&T was holding more than $85,000 of their funds, further indicating that any defect in Defendants' notice had no effect on their substantial rights. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950) (notice must be reasonably calculated to apprise interested parties of pendency of action and afford them an opportunity to object).

We also find that the district court did not err in declining to grant a Rule 41(g) hearing to allow Defendants the opportunity to question the federal agent as to BB&T's disposition of funds the Government never seized or possessed. See United States v. Stevens, 500 F.3d 625, 628 (7th Cir. 2007); United States v. Solis, 108 F.3d 722, 722 (7th Cir. 1997) (denying Rule 41(g) motion when Government never had possession of property). The Government offered to assist Defendants in securing the prompt return of these funds from BB&T, and the Constitution certainly requires no more than that.

Defendants' Sixth Amendment argument fares no better. Defendants failed to produce sufficient factual support for their claim that private counsel would have represented them had they had earlier access to the $10,078 overage wrongfully seized by the Government, the $82,565 from the bank, or the aggregate of the two. Furthermore, Defendants failed to produce credible evidence that the Government was responsible for Defendants' delay in accessing the $82,565 non-seized balance from BB&T. Consequently, we find no plain error affecting Defendants' substantial rights.

## III.

Defendants also challenge the sufficiency of the evidence supporting their convictions for obstruction of justice. A defendant challenging the sufficiency of the evidence bears a heavy burden. We must sustain a jury verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

To support a conviction for obstruction of justice, the Government must prove: (1) a pending judicial proceeding; (2) of which Defendants had knowledge or notice; and (3) that Defendants "acted corruptly, that is with the intent to

10

influence, obstruct, or impede that proceeding in its due administration of justice." United States v. Grubb, 11 F.3d 426, 437 (4th Cir. 1993) (footnote omitted). Additionally, a nexus must exist with the judicial or grand jury proceedings. See United States v. Aguilar, 515 U.S. 593, 599 (1995) (requiring "a relationship in time, causation, or logic with the judicial proceedings"). Intent to influence an ancillary proceeding independent of the court's or grand jury's authority is insufficient to establish the requisite nexus. Id.

The Government charged that Defendants had requested Mohamad Al-Shalabi, a civil engineer, to backdate feasibility studies relating to the construction of the homes. Al-Shalabi had actually completed the studies in September 2006, but Defendants requested that he backdate them to the summer of 2005 in order to create the appearance that they were, in fact, working on the studied properties at that time.

On appeal, Defendants argue that they did not act corruptly because Al-Shalabi actually had started work on the feasibility studies in 2005, and therefore the backdating was designed to more accurately portray reality. Defendants point to testimony from Al-Shalabi stating that he did nothing wrong or unprofessional by backdating the studies to 2005.

We find the testimony of Secret Service Agent Philip Soto and of Al-Shalabi provided sufficient evidence for a jury

11

to find beyond a reasonable doubt that Defendants' knowledge of the ongoing grand jury investigation prompted them to act corruptly. In 2006, when faced with an ongoing grand jury investigation, Defendants requested Al-Shalabi to backdate invoices and feasibility reports to indicate that feasibility studies were performed approximately one year earlier. The evidence at trial showed that in 2005 Al-Shalabi had merely performed a cursory evaluation of two properties listed in the indictment and had not opened a file, created a report, generated a bill, or communicated with Defendants again until approximately one year later when they requested the backdated documents for presentation in the grand jury investigation. Al-Shalabi's perception that he did nothing wrong or unprofessional by backdating the documents is of no consequence. See United States v. Erickson, 561 F.3d 1150, 1160 (10th Cir. 2009) (finding obstruction of justice conviction supported by presentation of manufactured evidence (backdated documents) even if the manufacturer thought the evidence supported reality).

Furthermore, we find the nexus requirement of Aguilar satisfied. The record contains sufficient evidence that Defendants should have reasonably foreseen obstruction of justice as a natural and probable consequence of presenting backdated documents to the case agent involved with the grand jury investigation. See United States v. Neiswender, 590 F.2d

12

1269, 1273 (4th Cir. 1979); see also United States v. Furkin, 119 F.3d 1276, 1283 (7th Cir. 1997) (finding evidence sufficient to support guilty verdict for obstruction of justice for requesting backdated leases which had the "natural and probable effect" of interfering with the grand jury investigation). We conclude that a reasonable trier of fact, viewing the evidence in the light most favorable to the Government, could have found sufficient evidence to support Defendants' guilty verdicts for obstruction of justice beyond a reasonable doubt.

IV.

Finding no plain error affecting Defendants' substantial rights regarding their alleged violations of their rights to due process and counsel of their choice, and finding sufficient evidence to support the jury's verdicts of obstruction of justice, we affirm Omondi's and Sanfo's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED